# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

EVALYN ANA MENDOZA,

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,[1]

Defendant.

_____/

Case No. 1:24-cv-01529-JLT-SKO

FINDINGS AND RECOMMENDATIONS
RECOMMENDING THAT PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
BE DENIED AND THE FINAL DECISION
OF THE COMMISSIONER OF SOCIAL
SECURITY BE AFFIRMED

(Doc. 12)

14-DAY DEADLINE

## I.    INTRODUCTION

On December 13, 2024, Plaintiff Evalyn Ana Mendoza ("Plaintiff") filed a complaint seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits (DIB) under the Social Security Act (the "Act"). (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

For the reasons set forth below, the undersigned recommends that Plaintiff's motion for

---

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration.  *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07.  He is therefore substituted as the defendant in this action.  *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  On April 13, 2026, this case was reassigned to the undersigned.  (*See* Doc. 16.)

summary judgment be denied, and that the final decision of the Commissioner be affirmed.

## II.        BACKGROUND

Plaintiff was born in 1991, has a college education, and previously worked as a cashier. (Administrative Record ("AR") 57, 78, 91, 226, 276, 286, 859.)  Plaintiff filed a claim for DIB payments on May 13, 2019, alleging she became disabled on December 1, 2017, due to clinical depression, generalized anxiety disorder, and attention deficit hyperactivity disorder (ADHD).  (AR 15, 79, 92, 226, 276, 286.)

Following a hearing, an Administrative Law Judge (ALJ) issued a written decision on August 6, 2020, finding Plaintiff not disabled.  (AR 15–25.)  Plaintiff appealed the decision to the district court.  (AR 923–25.)  The parties thereafter voluntarily remanded the case for further proceedings. (AR 934–36.)  On remand, the Appeals Council directed the assigned ALJ to conduct a *de novo* hearing, to take any further action needed to complete the record, and to issue a new written decision. (AR 942–43.)  The ALJ thereafter held a hearing and issued a new decision once again finding Plaintiff not disabled.  (AR 849–61.)

### A.    Relevant Evidence of Record[3]

#### 1.      Medical Evidence

In December 2017, Plaintiff was admitted to the Bakersfield Behavioral Health Hospital for treatment of "psychiatric issues."  (AR 305–306.)  She "seem[ed] depressed with low energy."  (AR 305.)  Plaintiff's mental status examinations showed normal speech; cooperative behavior; intact memory; normal cognition; blunted and expansive affect; average intellectual functioning; concrete thought process; normal orientation; compromised and poor judgment; and normal and fair insight. (AR 311, 314.)

Plaintiff presented for an appointment to treat her depression with psychosis in January 2018. (AR 384–85.)  She reported that prior to running out of her medication she was feeling "stable," but now feels "more depressed" without it.  (AR 384.)  On examination, she was cooperative, alert, and oriented, with depressed and anxious mood, blunted affect, organized thought process, normal

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

cognition, average intellectual functioning, normal insight and judgment, and appropriate thought content. (AR 384.) In February 2018, Plaintiff attended a follow up appointment. (AR 382–83.) She complained of worsening anxiety; poor concentration; irritable, anxious, and depressed mood; racing thoughts; and poor impulse control. (AR 382.)

In March 2018, Plaintiff reported that she had been hospitalized because of a "manic episode" during which she cut her wrists. (AR 380.) She reported that her higher dose of medication was helping her mood to "feel more level" and she denied suicidal ideation. (AR 380.) Her mental status examination showed she was cooperative, alert, and oriented, with normal mood, organized thought process, normal cognition, average intellectual functioning, normal insight and judgment, and normal thought content. (AR 380.) Later that same month, Plaintiff was seen for treatment for depression. (AR 378–79.) She reported anhedonia, continued anxiety, poor concentration, and a lack of motivation, but denied suicidal ideation. (AR 378.) Her mental status examination was as before, with anxious and depressed mood. (AR 378.)

Plaintiff attended a follow up appointment in April 2018. (AR 372–73.) She reported that her anxiety had improved but that her concentration was "bad." (AR 376.) Plaintiff denied suicidal ideation. (AR 376.) On examination, she was cooperative, alert, and oriented, with anxious mood, organized thought process, normal cognition, average intellectual functioning, normal insight and judgment, and appropriate thought content. (AR 376.)

In May 2018, Plaintiff attended an appointment to treat her depression. (AR 372–73.) She reported she was "doing well" but was nervous about final exams. (AR 372.) Plaintiff described her mood as "pretty good," stated that her depression and anxiety were "infrequent," and denied suicidal ideation. (AR 372.) Her medications were continued, and she reported using her "coping skills that she learned from her therapist." (AR 372.) Plaintiff's mental status examination was the same as before. (AR 372.)

Plaintiff complained of facial pain and requested a referral to pain management in August 2018. (AR 481–83.) She appeared "well," and was "pleasant and friendly, smiling." (AR 481.) Her physical examination was normal, with normal affect. (AR 481.) In November 2018, Plaintiff complained of ADHD symptoms in November 2018. (AR 484.) She appeared well-developed, well-

nourished, alert, and interactive, with normal affect. (AR 484.) That same month, Plaintiff requested a refill of Ritalin to treat her ADHD. (AR 487.) The provider noted that Plaintiff appeared "very nervous" and "was constantly swinging her legals while sitting on the table." (AR 491.) Her examination was otherwise normal, with appropriate mood and affect and normal judgment. (AR 491.)

Plaintiff presented for an appointment, complaining of anxiety, depression, sleeping problems, and difficulty concentrating in December 2018. (AR 454–58.) She denied suicidal ideation. (AR 457.) Plaintiff's mental status examination showed she was cooperative, engaging, alert, and oriented, with organized thought process; average intellectual functioning; calm, depressed, and anxious mood; and coherent and articulate speech. (AR 456–47.) Psychomotor agitation was observed. (AR 457.) That same month, Plaintiff complained of neck pain and headaches. (AR 493–95.) She was observed to be well-developed, well-nourished, alert, and interactive, with normal affect. (AR 493–94.)

In January 2019, Plaintiff complained of increased anxiety. (AR 504–509.) During the examination, Plaintiff was observed "constantly moving her leg and [making] a nervous gesture." (AR 508.) The examination was otherwise normal, with appropriate mood and affect and normal judgment. (AR 508.) She was prescribed medication. (AR 508.) That same month, Plaintiff presented for a medication refill. (AR 501–503.) She reported that she was "doing a lot better" and has "motivation and focus" with medication. (AR 501.)

Plaintiff reported in March 2019 that she went off her antidepressant medications because they were "making [her] too numb." (AR 462.) She further reported that her anxiety medication "works well" and her mood is "good." (AR 462.) On examination, Plaintiff was cooperative, alert, and oriented, with normal mood, organized thought process, normal cognition, normal affect, average intellectual functioning, normal insight and judgment, and normal thought content. (AR 462–63.)

In May 2019, Plaintiff reported that her depression had increased since she ceased the antidepressant medications. (AR 459.) Plaintiff stated that her concentration was "much better" on medication in June 2019. (AR 536.) That same month, Plaintiff presented for a follow up appointment to treat her anxiety and depression. (AR 564.) She reported that her mood was "stable"

and her concentration "great." (AR 564.) Regarding her anxiety, she stated that she was receiving therapy, and it was "helpful." (AR 564.)

Plaintiff requested medication refills in August 2019. (AR 550–53, 589–91.) She reported that she is able to concentrate and sleeps "well." (AR 550, 589.) In November 2019, Plaintiff presented for medication refills. (AR 595–97.) She reported that her medication is "very helpful in helping her focus" for her ADHD symptoms. (AR 595.) She was observed to be well-developed, well-nourished, alert, and interactive, with normal affect. (AR 595.)

In January 2020, Plaintiff attended a follow up appointment to treat her ADHD. (AR 605–607.) She again reported that her medication is "very helpful in helping her focus." Her physical examination was normal, as before. (AR 605.) Between May and August 2020, Plaintiff presented to a psychotherapist complaining of stress, anxiety, and depression. (AR 836–39, 1174–75.) She reported that she is "doing well" and not experiencing as many "[obsessive compulsive disorder] symptoms." (AR 1175.) Her mental status examinations showed she was alert and oriented, with intact memory, normal cognition, euthymic mood, organized thought process, good insight and judgment, and appropriate thought content. (AR 836, 838, 839, 1174, 1175.)

Plaintiff reported an increase in panic attacks at a telehealth appointment in March 2021. (AR 1169–72.) She denied suicidal ideation. (AR 1169.) Plaintiff was observed to sound "well and pleasant and friendly." (AR 1170.) Plaintiff presented to a psychotherapist in February 2023 for treatment of her depression. (AR 1195–96.) She reported that she was "feeling much better now that [she is] being treated for bipolar and schizophrenia." (AR 1195.) Plaintiff's mental status examination showed she was alert and oriented, with intact memory, good concentration, euthymic mood, normal thought process, excellent insight and judgment, and appropriate thought content. (AR 1195.)

In June 2023, Plaintiff presented for a physical examination and laboratory test. (AR 1327–31.) On examination, Plaintiff was observed to be healthy-appearing, well-nourished, and well developed, and exhibited good judgment, anxious mood, with full orientation, and normal memory. (AR 1330.)

### 2. Opinion Evidence

In July 2019, State agency consulting expert Richard Milan, Jr., Ph.D., opined that Plaintiff could maintain adequate concentration, persistence, and pace for simple one-two step tasks, capable of superficial social interactions with coworkers but limited public contact, and capable of appropriately adapting to routine work situations. (AR 86–87.) State agency consulting expert Stephen Saxby, Ph.D., similarly found that Plaintiff was able to maintain concentration, persistence, and pace throughout a normal workday/workweek as related to simple/unskilled tasks, capable of superficial social interactions with coworkers, but would do best with limited public contact, and able to make adjustments, avoid hazards in the workspace, and adapt to changes in simple routines. (AR 101–102.)

### B. Plaintiff's Statement

In May 2019, Plaintiff completed function report. (AR 240–47.) She stated that her depression hindered her performance of duties and tasks required of nearly all jobs. (AR 240.) Plaintiff stated that her depression made her appear and feel emotionally "dead," and that her anxiety makes her prone to irritability. (AR 240.) Plaintiff reported that her ADHD made it difficult to focus on simple tasks and do them well. (AR 240.) She stated that her impairments affected her ability to complete tasks, concentrate, understand, and remember. (AR 245.)

Plaintiff reported that she needed reminders, could pay attention for 30 seconds to one minute, did not finish what she started, followed written and spoken instructions poorly to fairly, and handled stress and changes in her routine poorly. (AR 242, 245–46.) She prepared her own meals, performed household chores, drove, could go out alone, shopped in stores and by computer, handled her own finances, played video games almost every day, spent time with others, had no problem getting along with family, friends, neighbors, or others, and got along fairly well with authority figures. (AR 242, 243, 244, 246.)

### C. Administrative Proceedings

The Commissioner denied Plaintiff's application for benefits initially on July 3, 2019, and again on reconsideration on October 8, 2019. (AR 106–09, 113–18.) Following a hearing, an Administrative Law Judge (ALJ) issued a written decision on August 6, 2020, finding Plaintiff not

disabled. (AR 15–25.) Plaintiff appealed the decision to the district court. (AR 923–25.) The parties thereafter voluntarily remanded the case for further proceedings. (AR 934–36.) On remand, the Appeals Council directed the assigned ALJ to conduct a *de novo* hearing, to take any further action needed to complete the record, and to issue a new written decision. (AR 942–43.)

At a hearing held on September 6, 2023, Plaintiff appeared via teleconference with counsel and testified before an ALJ as to her alleged disabling conditions and work history. (AR 875–87.) Plaintiff testified, *inter alia*, that she was currently working at Home Depot between 18 to 21 hours a week as a cashier. (AR 876–78.) A vocational expert ("VE") also testified at the hearing. (AR 888–92.)

**D.    The ALJ's Decision**

In a decision dated October 6, 2023, the ALJ once again found that Plaintiff was not disabled, as defined by the Act. (AR 849–61.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 852–61.) The ALJ decided that Plaintiff met the insured status requirements of the Act through March 31, 2026, and she had not engaged in substantial gainful activity since December 1, 2027, the alleged onset date (step one). (AR 852.) At step two, the ALJ found Plaintiff's "depression/bipolar disorder, anxiety, and attention deficit disorder (ADD)/attention deficit hyperactivity disorder (ADHD)" to be severe. (AR 852–53.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 853–855.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] can maintain attention, concentration, and pace for simple one to two step tasks (this limitation would limit the claimant to a general education development (GED) reasoning level of one).  She can have no more than occasional contact with the public and co-workers but no team or tandem work. [Plaintiff] can adapt to normal work stressors involved with unskilled work.

(AR 855–59.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision."  (AR 856.)

The ALJ determined that Plaintiff could not perform her past relevant work (step four) but that, given her RFC, she could perform a significant number of jobs in the national economy, specifically machine feeder, bottling line attendant, and bakery conveyor attendant (step five).  (AR 859–60.)  The ALJ concluded Plaintiff was not disabled from December 1, 2017, through the date of the decision.  (AR 860–61.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on November 21, 2024.  (AR 840–45.)  The ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 404.981.

### III.   LEGAL STANDARD

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.   Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.      DISCUSSION

Plaintiff contends that RFC is not supported by substantial evidence because the ALJ failed adequately to address assessed social limitations in a credited medical opinion and further failed to articulate clear and convincing reasons for discounting Plaintiff's testimony regarding her subjective complaints. (Doc. 12.) The Commissioner responds that the ALJ adopted limitations in the RFC to account for the opined assessments and properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations. (Doc. 15.) The undersigned agrees with the Commissioner and will recommend that the ALJ's decision be affirmed.

**A.      The RFC is Consistent with the Credited Medical Opinions**

An RFC is the most a claimant can do despite their limitations and is based upon all relevant evidence in the record, including medical records, medical source statements, and symptom testimony. 20 C.F.R. § 404.1545(a)(1)–(3); *Shafer v. Barnhart*, 120 F. Appx. 688, 698 (9th Cir. 2005). It is the ALJ's responsibility to make the RFC assessment and to translate the medical evidence into the RFC. 20 C.F.R. §§ 404.1546(c); *Rounds v. Comm'r SSA*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). An ALJ's RFC findings need only be consistent with assessed limitations and not identical to them. *See Petrini v. Berryhill*, 705 F. App'x. 511, 512 (9th Cir. 2017); *Ashlock v. Kijakazi*, No. 1:21-cv-01687-GSA, 2022 WL 2307594, at *3 (E.D. Cal. June 27, 2022) ("The RFC need not mirror a particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence.").

As set forth above, and pertinent here, State agency consulting experts Drs. Milan, Jr., and Saxby both opined that Plaintiff was capable of superficial social interactions with coworkers and limited public contact. (AR 86–87, 101–102.) The ALJ found the opinions "persuasive," explaining that they were

> supported with facts pertaining to [Plaintiff's] impairments and symptoms cited within the assessments, which revealed [she] had some abnormal mental status findings that improved with medication adjustment. However, in light of the objective medical evidence, I did not adopt these opinions in their entirety and limited the claimant to work outlined in the above residual functional capacity. That being said, insomuch as this opinion finds severe mental limitations limiting [Plaintiff] to a range of unskilled work, it is at least somewhat consistent with the record, as described above.

(AR 858.)

Plaintiff does not challenge the ALJ's conclusion that the opinions were persuasive. Instead, she contends that despite finding them persuasive, the ALJ's RFC conflicts with the opinion as it does not include any limitation directed to superficial co-worker contact and, where the RFC conflicts with a medical source opinion, Social Security Ruling 96-8p requires the ALJ to explain why the opinion was not adopted. (Doc. 12 at 13–14.) The undersigned finds, contrary to Plaintiff's argument, that the ALJ properly translated the social limitations opined by the State agency consulting experts

into concrete workplace limitations in the RFC.

Drs. Milan, Jr., and Saxby found that Plaintiff should have only "superficial" social interaction with coworkers—a "qualitative" limitation—and "limited" contact with the public—a "quantitative" limitation. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1106 (9th Cir. 2017). The ALJ accordingly assessed an RFC that included both a quantitative limitation: "no more than occasional contact with the public and co-workers," and a qualitative limitation: "no team or tandem work." The ALJ need not adopt credited limitations verbatim in the RFC. *See Venkaiya v. Comm'r of Soc. Sec.,* No. 2:22-CV-2189-MCE-KJN, 2023 WL 6929575, at *3 (E.D. Cal. Oct. 18, 2023) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008)); *see also Petrini*, 705 F. App'x. at 512; *Ashlock*, 2022 WL 2307594, at *3. The undersigned concludes that Plaintiff has not shown that the ALJ erred in their assessment and inclusion in the RFC of the credited social limitations opined by the State agency consulting experts. *See Quinones v. Comm'r of Soc. Sec.*, No. 1:23-CV-01006-EPG, 2024 WL 3498509, at *4 (E.D. Cal. July 22, 2024) (RFC precluding the plaintiff "from close teamwork, tandem work, and over the shoulder supervision" sufficiently incorporated medical opinion limiting the plaintiff to "brief, occasional, superficial interactions with supervisors, coworkers and the public.") (citing *Anna R. v. Comm'r of Soc. Sec.*, No. C21-5309-MLP, 2022 WL 251969, at *4 (W.D. Wash. Jan. 27, 2022) (RFC prohibiting close coordination, teamwork with co-workers and only allowing causal public interaction "essentially equivalent" to limitation to "superficial"), *aff'd in part, rev'd in part and remanded sub nom. Rodriguez v. Kijakazi,* No. 22-35263, 2023 WL 2965587 (9th Cir. Apr. 17, 2023), and *James S. v. O'Malley*, No. CV 22-167-M-KLD, 2024 WL 835308, at * 11 (D. Mont. Feb. 28, 2024) (ALJ reasonably translated "brief and superficial contact with others . . . to mean 'occasional interaction with supervisors, coworkers and the public,' not working 'in tandem with supervisors or coworkers,' and not working 'directly with the public.'")).

**B.      The ALJ Properly Found Plaintiff Less Than Fully Credible**

**1.      Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an

underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. The claimant is not required to show that their impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms, if the ALJ gives "specific, clear and convincing reasons" for the rejection.[5] *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which they complain. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**2.   Analysis**

As noted above, the ALJ found Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," but rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 856.) In view of this finding,

---

[5] The undersigned disagrees with the Commissioner that a lesser legal standard applies. (*See* Doc. 15 at 10 n.5.)

the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding.  *See Vasquez*, 572 F.3d at 591.

Here, the ALJ identified at least three valid reasons for discrediting Plaintiff's testimony.

a.    Reported daily activities

First, the ALJ made a reasonable determination based on specific, clear, and convincing evidence that Plaintiff's "complaints of disabling symptoms and limitations" were inconsistent with her admitted activities of daily living.  (AR 858.)  An ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelter*, 504 F.3d at 1040. Even if the claimant experiences some difficulty or pain, her daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Plaintiff reported that she prepared her own meals, performed household chores, drove, could go out alone, shopped in stores and by computer, handled her own finances, and played video games almost every day, which the ALJ observed was "inconsistent with her previous statements that she had difficulty with completing tasks, concentrating, understanding, and remembering."  (AR 856.) The ALJ also found that her ability to drive "shows the ability to complete tasks, concentrate, understand, and remember," and that her current work at Home Depot between 18 to 21 hours per week as a cashier further undermined her subjective statements.  (AR 856.)  The ALJ reasonably concluded that this testimony undermined Plaintiff's claim that her "physical and mental impairments [] prevent [her] from performing basic work-related activities."  (AR 856.)  *See Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021) (the plaintiff's "ability to play video games and watch television for sustained periods, to use a library computer a few times a week for two hours at a time (the maximum time permitted by the library), to use public transportation, to shop at stores, to perform personal care, to prepare meals, to socialize with friends, and to perform household chores" provided "substantial evidence" to support the ALJ's decision.); *Thomas*, 278 F.3d at 959 (affirming an ALJ's decision discounting a claimant's testimony after finding that the claimant "was able to perform various household chores such as cooking, laundry, washing dishes, and shopping").  *See also Denham v. Astrue*, 494 F. App'x 813, 815 (9th Cir. 2012) (affirming a credibility finding that relied, in part, on

two years of part-time janitorial work after the alleged onset date); *Archuleta v. Colvin*, No. CV 12–04486–MAN, 2013 WL 6002096, at *9 (C.D. Cal. Nov. 8, 2013) ("[P]laintiff's ability to work after the alleged onset date [gave] rise to a reasonable inference that plaintiff's subjective pain [was] not as restrictive as she allege[d] it to be.").

Plaintiff criticizes the ALJ for "fail[ing] to take into account the limited manner in which Plaintiff performed [her] activities." (Doc. 12 at 19.) Plaintiff does not, however, identify any evidence of limitation(s) in her ability to perform the above-described activities. Given the inconsistency between her daily activities and her allegations of disabling impairments, as specifically identified by the ALJ, the undersigned finds that the ALJ's analysis of Plaintiff's subjective statements and testimony is supported by proper legal analysis and substantial evidence.[6]

b.    Objective medical evidence

Next, the ALJ considered the extent to which Plaintiff's "alleged disabling impairments" were consistent with the objective medical findings. (AR 856–58.) While "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain," a lack of medical evidence "is a factor that the ALJ can consider in [their] credibility analysis." *Burch*, 400 F.3d at 680, 681. *See also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999). "When objective medical evidence in the record is ***inconsistent*** with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original) (collecting cases); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

Here, the ALJ noted that although the medical evidence showed Plaintiff had "some abnormal mental status findings," these symptoms were "infrequent" and normal mental status results persisted

---

[6] Even if the ALJ had erred in relying on Plaintiff's daily activities, any error would be harmless, as the undersigned has found the ALJ provided other clear and convincing reasons for discrediting her subjective complaints (*see infra*). *See Reyes v. Berryhill*, 716 F. App'x 714, 714 (9th Cir. 2018) (where ALJ provided valid reasons for discounting claimant's testimony, "[a]ny error in other reasons provided by the ALJ was harmless"); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004); *Williams v. Comm'r, Soc. Sec. Admin.*, Civ. No. 6:16–cv–01543–MC, 2018 WL 1709505, *3 (D. Or. Apr. 9, 2018) ("Because the ALJ is only required to provide a single valid reason for rejecting a claimant's pain complaints, any one of the ALJ's reasons would be sufficient to affirm the overall . . . determination.")

15

"throughout the remainder of the record." (AR 857 (citing AR 311, 314 (normal speech; cooperative behavior; intact memory; normal cognition; blunted and expansive affect; average intellectual functioning; concrete thought process; normal orientation; compromised and poor judgment; and normal and fair insight), AR 380, 462–63 (cooperative, alert, and oriented, with normal mood, organized thought process, normal cognition, average intellectual functioning, normal insight and judgment, and normal thought content), AR 372, 376 (cooperative, alert, and oriented, with anxious mood, organized thought process, normal cognition, average intellectual functioning, normal insight and judgment, and appropriate thought content), AR 481, 1170 (appeared "well," and was "pleasant and friendly, smiling," examination normal, with normal affect), AR 484, 493–94, 595 (well-developed, well-nourished, alert, and interactive, with normal affect), AR 491, 508 (appropriate mood and affect and normal judgment), AR 456–47 (cooperative, engaging, alert, and oriented, with organized thought process; average intellectual functioning; calm, depressed, and anxious mood; and coherent and articulate speech), AR 836, 838, 839, 1174, 1175 (alert and oriented, with intact memory, normal cognition, euthymic mood, organized thought process, good insight and judgment, and appropriate thought content), AR 1195 (alert and oriented, with intact memory, good concentration, euthymic mood, normal thought process, excellent insight and judgment, and appropriate thought content), AR 1130 (healthy-appearing, well-nourished, and well developed, and exhibited good judgment, anxious mood, with full orientation, and normal memory).)

Plaintiff does not dispute this evidence. Instead, she argues, citing Ninth Circuit authority, that "providing a summary of medical evidence . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." (Doc. 12 at 16 (citing *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)).) However, in that case, the Ninth Circuit held that its "cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Id.* at 1277. Moreover, the ALJ did not merely provide a summary of the medical evidence. Unlike in *Lambert*, the ALJ here detailed Plaintiff's complaints of "obsessive thoughts and compulsions, restlessness, worry, diminished interest, disturbed appetite, psychomotor agitation, fatigue, feeling worthless, sadness, difficulty concentrating and focusing, and

16

irritability on a daily basis," then contrasted that testimony with opposing evidence from the medical record showing frequent normal mental status findings (AR 857).  *See Lambert*, 980 F.3d at 1277 (""We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [claimant's] pain testimony where, as here, the ALJ never identified which testimony she found not credible, and never explained which evidence contradicted that testimony.") (quoting *Brown-Hunte*r, 806 F.3d at 494).    The identification of specific allegations and evidence contradicting those allegations permitted the undersigned to review the ALJ's reasoning.  Plaintiff's argument is therefore unavailing.  *See Kaufman v. Kijakazi*, 32 F.4th 843, 851–52 (9th Cir. 2022) ("Looking to the entire record, substantial evidence supports the ALJ's conclusion that Claimant's testimony about the extent of her limitations conflicted with the evidence of her daily activities, such as sewing, crocheting, and vacationing."); *Guthrie v. Kijakazi,* No. 21-36023, 2022 WL 15761380, at *1 (9th Cir. Oct. 28, 2022) *(*the ALJ sufficiently explained her reasons for discounting the plaintiff's symptom testimony, and "we can easily follow her reasoning and meaningfully review those reasons.") (citing *Kaufman*, 32 F. 4th at 851); *Lopez v. Colvin*, No. 1:13-CV-00741-SKO, 2014 WL 3362250, at *16 (E.D. Cal. July 8, 2014) ("While the ALJ did not explain that Plaintiff's daily activities were ***consistent*** with specific work activity, the ALJ found Plaintiff's daily activities were ***inconsistent*** with the severity of symptoms he alleged . . . [and] [b]ecause Plaintiff's daily activities were inconsistent with the disabling symptoms he alleged, the ALJ properly found such claims not credible.") (emphasis in original).  *See also Smartt*, 53 F.4th at 499 ("The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince."); *Razaqi v. Kijakaz*i, No. 1:20-CV-01705-GSA, 2022 WL 1460204, at *5 (E.D. Cal. May 9, 2022) ("The ALJ did not necessarily match each piece of evidence with the testimony it purportedly undermined, but no controlling precedent requires that level of specificity.  No inferential leaps are required to find the ALJ's reasoning clear and convincing."); *cf. Brown-Hunter,* 806 F.3d at 495 (finding error where the ALJ stated only a general, nonspecific finding regarding credibility after simply reciting the medical evidence).

The undersigned finds the ALJ's conclusion that the evidentiary record does not support, and instead undermines, Plaintiff's subjective statements is supported by substantial evidence.  The ALJ's

determination that Plaintiff's complaints are inconsistent with the medical evidence is therefore a clear and convincing reason for discounting her subjective symptom testimony. *See Smartt,* 53 F.4th at 499 (concluding that the ALJ properly discredited the claimant's testimony based on inconsistencies with objective medical evidence).

### c. Improvement with treatment

Finally, the ALJ found Plaintiff was treated with "therapy and medication, which improved her symptoms." (AR 857.) In evaluating a claimant's claimed symptoms, an ALJ may find a plaintiff less credible when their symptoms can be controlled by treatment and/or medication. *See* 20 C.F.R. § 404.1529(c)(3)(iv)–(v); *see also Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purposes of determining eligibility for [disability] benefits.").

There is substantial evidence in the record on which the ALJ relied that Plaintiff's mental condition had improved with medications and treatment, resulting in the normal mental status examinations described above. For example, in January 2018, it was noted that Plaintiff was "stable" on her medication. (AR 384.) In March 2018, Plaintiff reported that her higher dose of medication was helping her mood to "feel more level." (AR 380.) Plaintiff stated that her anxiety had improved on medication in April 2018. (AR 376.) In May 2018, Plaintiff was "doing well," describing her mood as "pretty good," stating that her depression and anxiety were "infrequent," and reporting using her "coping skills that she learned from her therapist." (AR 372.) Plaintiff reported in January 2019 she was "doing a lot better" and has "motivation and focus" with medication. (AR 501.) In March 2019, Plaintiff stated that her anxiety medication "works well" and her mood was "good." (AR 462.) Plaintiff reported in June 2019 that her mood was "stable," her concentration "much better" and "great" on medication, and therapy "helpful" in treating her anxiety. (AR 536, 564.) In November 2019, Plaintiff stated her medication is "very helpful in helping her focus" for her ADHD symptoms. (AR 595.) Plaintiff was "doing well" between May and August 2020 and not experiencing as many "[obsessive compulsive disorder] symptoms." (AR 1175.) And in February 2023, Plaintiff reported that she was "feeling much better now that [she is] being treated for bipolar and schizophrenia." (AR 1195.)

Plaintiff does not address, much less contest, the ALJ's reasonable determination that improvement in her symptoms did not support her impairments "to the level of severity alleged" (AR 857), which the Court finds supported by the record  As there is substantial evidence of Plaintiff's improvement with treatment, such is a clear and convincing reason for not finding Plaintiff's subjective complaints fully credible. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (the ALJ's adverse credibility determination properly accounted for physician's report of improvement with medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming denial of benefits and noting that claimant's impairments were responsive to treatment).

In sum, the undersigned finds that the ALJ provided at least three clear and convincing reasons, supported by substantial evidence, to discredit Plaintiff's reports regarding the extent of her impairments.

## V.      FINDINGS AND RECOMMENDATIONS

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.      Plaintiff's motion for summary judgment (Doc. 12) be DENIED;

2.      The final decision of the Commissioner of Social Security be AFFIRMED; and

3.      The Clerk of Court be DIRECTED to enter judgment in favor of Defendant Frank Bisignano, Commissioner of Social Security, and against Plaintiff Evalyn Ana Mendoza, and to CLOSE this action.

These findings and recommendations are submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of these recommendations, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The District Judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **June 4, 2026**                    /s/ *Sheila K. Oberto*
                                     UNITED STATES MAGISTRATE JUDGE